IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARIA ANDRADE, AS ADMINISTRATOR OF THE ESTATE OF JOSE ANDRADE-GARCIA, AND HERMINIA ANDRADE,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JBS USA, JBS LIVE PORK, LLC, SWIFT PORK COMPANY, TIM SCHELLPEPER, CHRIS GADDIS, BOB KREBS, NICHOLAS WHITE, TODD CARL, BRADLEY COMSTOCK, NICHOLAS AGUIRRE, TYLER DEVICK, NIKKI RICHARDSON, CAMERON BRUETT, AND JANE/JOHN DOES 1-20,<br><br>　　　　Defendants. | Case No. 4:21-cv-164<br><br><br>**DEFENDANTS' NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

Defendants JBS USA Food Company ("JBS USA"), JBS Live Pork, LLC ("JBS Pork"), and Swift Pork Company ("Swift Pork") (collectively, the "Corporate Defendants") file this Notice of Removal to remove this action to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1331 and 1332.  Plaintiffs Maria Andrade, as Administrator of the Estate of Jose Andrade-Garcia, and Herminia Andrade (collectively, "Plaintiffs") originally filed this action in the Iowa District Court for Marshall County, Colorado, Case No. 02641 LACI011441, where the action is currently pending.

1

## I. NATURE OF THE ACTION

1. While presented as a negligence and fraud case, Plaintiffs' state court lawsuit against a meat-processing facility due to Jose Andrade-Garcia's alleged exposure to COVID-19 during the global pandemic implicates and necessarily raises serious and substantial federal issues involving the operation of a facility declared as critical infrastructure by the United States President under the powers vested in the Executive Branch by the Defense Production Act ("DPA").

2. In April 2020, Mr. Andrade-Garcia worked for the Swift Pork plant in Marshalltown, Iowa. (*See* Petition for Damages ("Pet.") attached hereto as Exhibit ("Ex.") A, ¶ 82.) During the second week of April 2020, Mr. Andrade-Garcia began feeling sick but did not have a fever. (*Id.* ¶ 83.)

3. The Petition alleges that doctors determined Mr. Andrade-Garcia contracted COVID-19 due to being exposed to the coronavirus at the Marshalltown plant. (*Id.* ¶ 86.)

4. Among other things, Plaintiffs allege Mr. Andrade-Garcia contracted COVID-19 as a direct result of Defendants' carelessness, negligence, recklessness, and gross negligence. (*Id.* ¶ 88.) Plaintiffs further allege that Defendants caused and allowed numerous dangerous conditions in violation of federal regulations and guidance issued by the Occupational Safety and Health Administration ("OSHA") and that Defendants failed "to abide by Federal rules regulations and guidance." (*Id.* ¶¶ 70 & 95(y).)

5. The Petition also blames Defendants for keeping the facility open during the pandemic. (*See id.* ¶¶ 103 & 115 ("The Defendants' prolonged refusal to temporarily close down the Marshalltown plant despite knowing that many workers at the plant had tested positive for COVID-19 and despite knowledge that COVID-19 was rapidly spreading through the workforce

at the Marshalltown plant is evidence of their incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.").)

6. Additionally, Plaintiffs accuse Defendants of, *inter alia*, failing to properly screen employees for COVID-19, isolate sick employees, socially distance employees, install physical barriers to separate workers, develop and implement appropriate cleaning and disinfection practices, provide employees with appropriate personal protective equipment, and require employees to wear face coverings. (*Id.* ¶ 95(c), (e), (f), (h), (i), (j), (k), & (n).)

7. Although Mr. Andrade-Garcia's alleged exposure to and sickness from the virus occurred nearly two years ago, Plaintiffs waited until the eve of the second anniversary of the event to file a lawsuit against JBS. (*See generally id.*)

8. Plaintiffs' Petition includes claims for gross negligence and fraudulent misrepresentation. (*Id.* ¶¶ 90-116.) Plaintiffs also seek damages for loss of consortium and punitive damages. (*Id.* ¶¶ 117-128.)

## II. REMOVAL IS TIMELY

9. On April 4, 2022, Plaintiffs filed this action in the Iowa District Court for Marshall County, Colorado, styled *Maria Andrade, as Administrator of the Estate of Jose Andrade-Garcia, and Herminia Andrade v. JBS USA, JBS Live Pork, LLC, Swift Pork Company, Tim Schellpeper, Chris Gaddis, Bob Krebs, Nicholas White, Todd Carl, Bradley Comstock, Nicholas Aguirre, Tyler Devick, Nikki Richardson, Cameron Bruett, and Jane/John Does 1-20*, Case No. 02641 LACI011441. (*See* Pet.)

10. Defendants' counsel accepted service on behalf of all Defendants on April 13, 2022. (*Id.*)

11. Pursuant to 28 U.S.C. § 1446(a), a copy of the Petition and all process and pleadings served upon Defendants are attached to this notice as Exhibit "A."

12. Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty (30) days of the date Defendants were served with the Petition.

13. Consent of Defendants Tim Schellpeper, Chris Gaddis, Bob Krebs, Nicholas White, Todd Carl, Bradley Comstock, Nicholas Aguirre, Tyler Devick, Nikki Richardson, Cameron Bruett, and Jane/John Does 1-20 (collectively, the "Individual Defendants") is not needed because they should be disregarded based on the doctrine of fraudulent joinder. *See Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017) ("We also agree with the district court's conclusion that because McLiney and O'Laughlin were fraudulently joined, their consent was not needed for removal."). Nevertheless, the Individual Defendants consent to removal, as evidenced by their counsel signing this Notice of Removal on behalf of all Defendants. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187-88 (8th Cir. 2015).

### III. REMOVAL IS PROPER

14. Removal is proper pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States. Removal is also proper pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and Swift Beef, and the amount-in-controversy exceeds $75,000.00.

**A.    Federal Question Jurisdiction Exists Over This Dispute.**

15. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Under *Grable*, a state law

4

claim can give rise to federal question jurisdiction as long as it appears from the lawsuit that the right to relief depends upon the construction or application of federal law.

16. A claim purportedly arising under state law may be removed to federal court pursuant to federal question jurisdiction when the federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–14).

17. All four of those requirements for removal under federal question jurisdiction are met here.

18. **Plaintiffs' Claims Necessarily Raise a Federal Issue.** As to the first requirement, the Petition explicitly claims Defendants violated "Federal rules, regulations, and guidance." (Pet. ¶ 95(y).) Thus, Plaintiffs admit their allegations directly implicate federal rules, regulations, and guidance, and federal question jurisdiction exists.

19. In addition, one essential question is embedded in each of Plaintiffs' claims: In the midst of a presidentially declared national emergency, how must America's meat processing facilities balance the interests of safeguarding workplace health and safety with their ongoing obligation to feed the American people? Any duty ascribed to Defendants unavoidably implicates the President's explicit directive regarding the safe operation of meat processing facilities during the pandemic, as well as federal policies governing the nation's food supply, national security, and

economy. *See* Exec. Order No. 13917, "Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19," 85 Fed. Reg. 26313 (Apr. 28, 2020) ("Food Supply Executive Order") (invoking authority under the Defense Production Act, 50 U.S.C. § 4501 *et seq.*). Plaintiffs also claim Defendants caused and allowed numerous dangerous conditions in violation of OSHA rules and regulations. (Pet. ¶¶ 69-70.)

20. Besides explicitly citing to and relying on federal statutes and OSHA regulations as the basis of his claims, the Food Supply Executive Order also dispels any doubt that a unique federal interest is implicated here. The Marshalltown meatpacking plant where Mr. Andrade-Garcia provided security guard services supplies "a scarce and critical material essential to the national defense," as defined by the Defense Production Act of 1950. *See* 85 Fed. Reg. 26313 (meat and poultry suppliers constitute "critical infrastructure during the national [COVID-19] emergency").

21. Here, Plaintiffs seek to impose liability on Defendants for allegedly failing to mitigate the risk of COVID-19 transmission at a meat processing plant—precisely the conduct governed by the Food Supply Executive Order. (*Compare id.* ¶¶ 70, 95, 103, & 115 *with* 85 Fed. Reg. 26313, 26313 (ordering meat processors "continue operations consistent with the guidance for operations jointly issued by the CDC and OSHA" in light of the "dramatic toll" taken by "necessary mitigation measures").)

22. And as will be discussed further below, Plaintiffs' allegations of wrongdoing necessarily implicate conduct governed by the Federal Meat Inspection Act, ("FMIA"), 21 U.S.C. § 601 *et seq.*

23. Also, as to the first requirement, Plaintiffs' Petition seeks to impose liability on Defendants for failing to comply with state rules, regulations, and guidance even though the Food Supply Executive Order issued under the DPA confirmed that meatpacking facilities, such as the Marshalltown plant, were to follow CDC and OSHA standards, guidelines and protocols. (*See* Compl. ¶ 95(y).)

24. Further, Plaintiffs' claims' reliance on state and local regulations (Compl. ¶ 95(y)) necessarily clash with and are preempted by the FMIA, as well as conflict with the Food Supply Executive Order issued under the DPA, which confirmed that meatpacking facilities, such as the Marshalltown plant, were to follow CDC and OSHA standards, guidelines, and protocols.

25. A state court's application of any standard of conduct on a meat processing facility contrary to that imposed by the federal government may compromise a unique federal interest and frustrate the government's capacity to impose a uniform rule. *Cf. Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, No. 5:20-cv-06063, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020) (recognizing that referring a plaintiff's tort claims against a meat processing plant to OSHA is necessary to "ensure uniform national enforcement of the Joint [CDC and OSHA] Guidance").

26. Defendants are aware that other claims have been remanded to state court on grounds that the Eighth Circuit does not recognize federal officer removal preemption. Defendants do not think this is dispositive, as the FMIA and Executive Order issued under the DPA create federal question jurisdiction.

27. Accordingly, for all these reasons, the first element necessary for federal question jurisdiction under *Grable* is satisfied.

28. **The Federal Issues Are Actually Disputed.** The second requirement is also met because JBS disputes that Plaintiffs' claims are consistent with federal law. To the contrary, Plaintiffs' claims are inconsistent with, and preempted by, federal law including the FMIA. The Department of Agriculture has promulgated hundreds of pages of federal regulations under the FMIA governing operations of meat-processing facilities, including detailed requirements addressing the control of infectious diseases among facility workers and required use of personal protective equipment. For example, the United States Department of Agriculture's ("USDA") Food Safety and Inspection Service has promulgated a specific "[d]isease control" regulation requiring that "[a]ny person who has or appears to have an infectious disease . . . must be excluded from any operations which could result in product adulteration and the creation of insanitary conditions until the condition is corrected." 9 C.F.R. § 416.5(c). FSIS regulations also require facilities to "encourage early reporting of symptoms of injuries and illnesses," *id.* § 381.45, and also govern the personal protective equipment that facility workers must wear. *Id.* § 416.5(b).

29. The FMIA also expressly preempts state-law requirements "in addition, to, or different than" those imposed by the FMIA regarding the "premises, facilities, and operations" of facilities that the USDA inspects under the FMIA. 28 U.S.C. § 678. For purposes of preemption, the term "requirements" includes obligations claimed to be imposed by common law and by state statute. *See, e.g., Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445-46 (2005).

30. Existing legal authority supports JBS's position. In *Johnson v. Tyson Foods, Inc.*, No. 2:21-CV-156-Z-BR, 2022 WL 456897, at *3-4 (N.D. Tex. Jan. 20, 2022), the court dismissed with prejudice similar claims against a meatpacker relating to employees' alleged exposure to COVID-19 on the grounds that the state law claims were preempted as a matter of law by the FMIA.

31. Accordingly, for all these reasons, the second requirement for federal question jurisdiction is met.

32. **There Is a Substantial Federal Issue.** The third requirement also is satisfied because the issues are substantial to the federal system as a whole. Uniform application of laws and regulations regarding the nation's food supply is of monumental national concern. As noted above, the DPA recognizes that meat processing plants provide a "scarce and critical material to the national defense." *See* 85 Fed. Reg. 26313. Application of various state laws would result in inconsistencies in the operation of meat-processing facilities, as well as the delivery and quality of protein sources to the public, thereby nullifying the purpose of federal controls set forth by the USDA, the DPA, the CDC, and OSHA.

33. Accordingly, the third requirement of *Grable* is satisfied.

34. **This Court's Determination Will Not Disturb the Balance of State and Federal Judicial Responsibilities.** The fourth requirement is satisfied because exercising federal jurisdiction in this case does not disturb the balance between federal and state interests. It instead promotes that balance because of the strong federal interest in uniformly regulating meatpackers, particularly during the global pandemic when the President declared these entities to be critical infrastructure under the DPA. Accordingly, exercising jurisdiction in this case will not "materially affect, or threaten to affect, the normal currents of litigation," such that a "flood of cases" would result on the federal docket. *See Grable*, 545 U.S. at 319.

35. Therefore, the fourth and final requirement for federal question jurisdiction is met.

## IV.  CONCLUSION

36. As demonstrated herein, removal of this dispute to this Court is proper because this Court would have had original jurisdiction of this matter under 28 U.S.C. §§ 1331 and 1332.

37. Removal of this dispute to this Court is proper because (1) federal question jurisdiction exists based on the Petition's allegations and controlling law demonstrating that Plaintiffs' claims arise under the Constitution, laws, or treaties of the United States and (2) diversity jurisdiction exists based on the Petition's allegations and controlling law demonstrating that the Individual Defendants were fraudulently joined.

38. Finally, to the extent the above basis for federal jurisdiction does not extend to one or more of Plaintiffs' claims, this Court has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367.

39. Defendants will promptly provide written notice of this filing to all adverse parties and will file a copy of this Notice of Removal with the clerk of the state court where this suit is currently pending.  *See* 28 U.S.C. § 1446(d).

Respectfully submitted,

**Certificate of Service**
The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on May 13, 2022, by CM/ECF.

*/s/ Adam D. Zenor*

Copy to:

ATTORNEYS FOR PLAINTIFFS

ZENOR KUEHNER, PLC

By:  */s/  Adam D. Zenor*
Adam D. Zenor, AT0009698

111 East Grand Avenue, Suite 400
Des Moines, IA  50309
Phone:  515/650-9005
Fax:  515/206-2654
adam@zenorkuehner.com

By:  */s/  Clayton E. Bailey*
Clayton E. Bailey
(*Pro Hac Vice* Forthcoming)

> Bailey Brauer PLLC
> Campbell Centre I
> 8350 N. Central Expressway, Suite 650
> Dallas, TX 75206
> cbailey@baileybrauer.com
>
> ATTORNEYS FOR DEFENDANTS

*et seq.*